2004 WY 56

**NMC, Appellant (Respondent),**

**v.**

**JLW, ex rel., NAW, a minor child, Appellee (Petitioner).**

**No. C–03–7.**

Supreme Court of Wyoming.

May 17, 2004.

94

Representing Appellant: F. Scott Peasley of Peasley Law Office, Douglas, WY.

Representing Appellee: No appearance.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] Appellee JLW (Father) petitioned to establish paternity, custody, child support, and visitation in the District Court for the Eighth Judicial District of Wyoming. The district court initially assumed jurisdiction under the emergency provision provided in Wyo. Stat. Ann. § 20–5–104(a)(iii) (LexisNexis 2003).[1] Following a November 18, 2002 hearing, the district court concluded that emergency jurisdiction no longer existed. However, the district court found that significant connections with the state of Wyoming and substantial evidence concerning the mi-

nor child's present or future care, protection, training, and personal relationships warranted the continued exercise of jurisdiction under § 20–5–104(a)(ii). Mother claimed the district court lacked subject matter jurisdiction or, in the alternative, jurisdiction in Wyoming constituted a forum *non conveniens.* Mother appeals the district court's denial of the motion to dismiss for lack of jurisdiction. We reverse and remand.

## ISSUES

[¶ 2] Mother presents the following issues on appeal:

I. Does the [Parental Kidnapping Prevention Act (PKPA)] preclude a Wyoming court from asserting jurisdiction over a child custody proceeding, under the significant contacts provisions of the [Uniform Child Custody Jurisdiction Act (UCCJA)], when there is a similar action pending in the child's home state?

II. Can a court establish subject matter jurisdiction under the "significant connections" provisions of W.S. § 20–5–104(a)(ii), when initial jurisdiction was assumed under its emergency powers of W.S. § 20–5–104(a)(iii)?

III. Did the district court abuse its discretion by failing to make prompt and meaningful contact with the Texas court to facilitate resolution of this jurisdictional conflict?

Father did not file a brief.

## FACTS

[¶ 3] Mother and Father never married. Together they have one child, NAW, born June 20, 1997. Mother and Father lived

---

1. Wyo. Stat. Ann. § 20–5–104 (LexisNexis 2003) provides in pertinent part:

(a) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:

(i) This state is the home state of the child at the time of commencement of the proceeding, or was the child's home state within six (6) months before commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(ii) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships;

(iii) The child is physically present in this state and has been abandoned or if it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent[.]

together and separately in Wyoming. In May 1999, Mother and NAW moved to Houston, Texas. Mother and the minor child were separated on May 24, 2002, as a result of Mother's overdose on prescription medication. Father traveled to Texas at that time and returned to Wyoming with the child while Mother received medical treatment.

[¶ 4] On June 6, 2002, Father filed a petition to establish paternity, custody, child support, and visitation in the District Court, Eighth Judicial District. In his petition, Father requested that the district court assume jurisdiction under the emergency provisions of the UCCJA. Wyo. Stat. Ann. § 20–5–104(a)(iii). Father also filed a motion with the district court requesting an order for temporary custody of the minor child. The district court granted temporary custody to Father on June 12, 2002, and held a hearing on June 26, 2002, regarding temporary custody, child support, visitation, and jurisdiction.

[¶ 5] After considering the evidence, the district court held that Texas was the child's "home state" as defined by the UCCJA and that Texas would have jurisdiction over custody issues. The court declined to exercise jurisdiction under § 20–5–104(a)(ii) citing insufficient evidence to establish significant connections. Although the Wyoming court lacked home state and significant connections jurisdiction, it assumed jurisdiction pursuant to § 20–5–104(a)(iii). In doing so, the court found that the May 24, 2002 overdose satisfied the requirements for emergency jurisdiction. The court thus concluded that it was in the best interest of the minor child to remain in Father's custody subject to Mother's rights of visitation.

[¶ 6] Mother filed an objection to the district court's jurisdiction contesting subject matter jurisdiction and alleging forum *non conveniens*. Mother agreed with the district court that Texas was the minor child's "home state" and that insufficient evidence of significant connections required the court to decline jurisdiction under § 20–5–104(a)(ii). However, Mother specifically alleged that the emergency initially used to grant the Wyoming court jurisdiction had abated and she was no longer a threat to herself or the minor child. In addition, Mother claimed that Texas was the more convenient forum.

[¶ 7] While the action was pending in the Wyoming district court, Mother filed a petition to establish parentage in Harris County, Texas. In support of her challenge to Wyoming's jurisdiction, Mother claimed that pursuant to Wyo. Stat. Ann. § 20–5–108 (LexisNexis 2003) it was in the best interest of the minor child that Wyoming decline to exercise jurisdiction. In support of dismissing the Wyoming action, Mother again claimed that Texas was the minor child's "home state," the majority of evidence concerning the best interests would come from Texas, and that the emergency condition initially supporting jurisdiction in Wyoming no longer existed.

[¶ 8] On September 25, 2002, the Wyoming district court conducted a hearing to determine if the emergency condition warranting jurisdiction still existed. The district court found insufficient evidence to establish that the emergency had abated, and denied the motion to dismiss. The Wyoming court agreed, however, to contact the district court in Harris County, Texas and notify the parties with the results of the conference. On October 10, 2002, Mother filed a second motion to dismiss for lack of jurisdiction, again contesting subject matter jurisdiction and alleging forum *non conveniens*. The court heard Mother's motion to dismiss on November 18, 2002. The court reiterated that, at the time this action was filed, Texas was the minor child's "home state." In addition, the court noted that the emergency jurisdiction previously exercised under § 20–5–104(a)(iii) was no longer appropriate. However, the Wyoming court found that it was in the best interest of the child that Wyoming retain jurisdiction under § 20–5–104(a)(ii). Specifically, the district court found that Wyoming should retain jurisdiction because the child and at least one parent had significant connection with the state and there was substantial evidence in Wyoming concerning the child's future care, protection, training, and personal relationships. The court denied Mother's motion to dismiss for lack of jurisdiction. Mother seeks review of this order.

## STANDARD OF REVIEW

[¶ 9] In reviewing a question of subject matter jurisdiction:

We conduct a *de novo* review of jurisdictional questions pursuant to "the inherent power, and the duty, to address jurisdictional defects on appeal. . . ." *Gookin v. State Farm Fire & Cas. Ins. Co.*, 826 P.2d 229, 232 (Wyo.1992). If a lower court acts without jurisdiction, "this court will notice the defect and have jurisdiction on appeal, not on the merits, but merely for the purpose of correcting the error of the lower court in maintaining the suit." *Gookin*, at 232.

*Pawlowski v. Pawlowski*, 925 P.2d 240, 242 (Wyo.1996) (citation omitted). Further, "[i]n child custody proceedings, the determination of whether to exercise jurisdiction or to defer to the courts of another state is reviewed for an abuse of discretion." *Steele v. Neeman*, 6 P.3d 649, 653 (Wyo.2000) (citing *Ritter v. Ritter*, 989 P.2d 109, 111 (Wyo.1999)).

## DISCUSSION

[¶ 10] Mother contends the district court improperly exercised subject matter jurisdiction. In support, Mother argues that "home state" jurisdiction should take priority over jurisdiction based on significant connections.[2] We are persuaded by Mother's argument.

[¶ 11] Wyoming's statutes concerning child custody jurisdiction are modeled on the UCCJA. Wyo. Stat. Ann. § 20–5–104. When the Wyoming Legislature adopted the UCCJA, it made the purposes for doing so clear.[3] The uniform act was intended to help avoid conflict and competition among jurisdictions and instead focus on the well-being of affected children. Additionally, the uniform act promotes cooperation and communication among states to determine which jurisdiction can most effectively determine the best interests of the child. In situations where a child satisfies more than one jurisdictional criteria, the intent of the act is to direct litigation to the state with the "closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available[.]" § 20–5–102(a)(iii).

[¶ 12] The PKPA is a federal counterpart to state laws concerning child custody

2. The Wyoming Statutes, the UCCJA, and the PKPA all define "home state" as:

[T]he state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child has lived since birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period[.]

Wyo. Stat. Ann. § 20–5–103(a)(v); *see also* Uniform Child Custody Jurisdiction Act § 2(5) (1968); 28 U.S.C. § 1738A(b)(4) (2003).

3. The Wyoming Legislature specifically provided in § 20–5–102:

(a) The general purposes of this act are:
(i) To avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
(ii) To promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
(iii) To assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;
(iv) To discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
(v) To deter abductions and other unilateral removals of children undertaken to obtain custody awards;
(vi) To avoid relitigation of custody decisions of other states in this state insofar as feasible;
(vii) To facilitate the enforcement of custody decrees of other states;
(viii) To promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and
(ix) To make uniform the law of those states which enact it.
(b) The provisions of this act shall be construed to promote the general purposes stated in this section.

jurisdiction. Like the UCCJA, the PKPA was enacted to limit jurisdictional conflict over child custody issues and to deter parental kidnapping for the purpose of receiving custody awards. *Peterson v. Peterson*, 464 A.2d 202, 204 (Me.1983); *Tufares v. Wright*, 98 N.M. 8, 644 P.2d 522, 525 (1982); *Sams v. Boston*, 181 W.Va. 706, 384 S.E.2d 151, 156 (1989). The legislative findings regarding the PKPA indicate that Congress intended to "promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child[.]" Congressional Findings and Declaration of Purposes, Pub.L. No. 96–611, § 7(c)(1), 94 Stat. 3569 (1980). Further, Congress sought to "expand the exchange of information ... between States which are concerned with the same child" and to "discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child." *Id.* at §§ 7(c)(2), 7(c)(4).

[¶ 13] This court addressed both these acts and their respective purposes in *State ex rel. Griffin v. Dist. Court of Fifth Dist.*, 831 P.2d 233 (Wyo.1992). We found that "[a] fundamental purpose of both the UCCJA and the PKPA is to avoid conflict and promote cooperation." *Id.* at 237. Furthermore, both acts are intended to limit forum shopping, deter interstate abductions and unilateral moves, and promote decisions in the best interest of the child. *Id.* The UCCJA and PKPA also share the fundamental jurisdictional concept "that the child's 'home state' should have preeminent authority to determine custody and visitation and that authority should be respected elsewhere." *Bruner v. Tadlock*, 338 Ark. 34, 991 S.W.2d 600, 604 (1999) (citing Robert A. Leflar, *American Conflicts of Law* § 243 (4th ed.1986)). We noted that "the UCCJA 'significant connection' criteria is eliminated as a ground for jurisdiction under the PKPA where, as here, there is a 'home state[.]' " *Griffin*, at 239 n. 8. Ignoring Texas' "present 'home state' status to determine custody by recognizing Wyoming jurisdiction under tenuous ... reliance on one of the overlapping UCCJA/PKPA ju-risdictional criteria would circumvent the purposes of both Acts." *Griffin*, at 237.

[¶ 14] From the outset, the record indicates that the Wyoming district court considered Texas to be the minor child's "home state" under § 20–5–104(a)(i), and Mother does not contend that the Wyoming court improperly exercised emergency jurisdiction under § 20–5–104(a)(iii). Emergency jurisdiction under the UCCJA is, however, temporary. *Trader v. Darrow*, 630 A.2d 634, 638–39 (Del.1993). Indeed, the district court subsequently assumed jurisdiction under the significant connection provisions in § 20–5–104(a)(ii), following a finding that the condition initially warranting emergency jurisdiction had abated. The district court then evaluated the respective connections with both Wyoming and Texas and determined them to be roughly equivalent. Consequently, the Wyoming court continued to exercise jurisdiction based on the significant connections provision, regardless of "home state," and entered a temporary custody arrangement. No formal custody determination has been made by any court.

[¶ 15] In formulating a formal custody arrangement, "[b]oth the PKPA and the UCCJA provide a jurisdictional preference for the child's 'home state' immediately preceding an application for an original custody determination." *Griffin*, 831 P.2d at 238; *see also* 28 U.S.C.S. § 1738A(c)(2)(A)(ii); Wyo. Stat. Ann. § 20–5–104(a)(i). In the present case, Texas has been the child's "home state" for the minimum six-month period immediately preceding commencement of the custody proceeding in Wyoming. The child was absent from Texas only because of Father's removal of the child to Wyoming. Consequently, the "home state" initial child custody provision of the Texas statutes is satisfied, granting jurisdiction to that state. Vernon's Texas Codes Ann., Family Code § 152.201(a)(1) (2002).

[¶ 16] "A foreign state which is neither a decree state nor a home state may not assume jurisdiction in contravention to the UCCJA and PKPA preference for 'home state' jurisdiction." *Griffin*, 831 P.2d at 240. Furthermore, Wyoming's exercise of jurisdic-

tion would be contradictory to the intent of the Wyoming legislature when adopting the UCCJA to avoid the jurisdictional competition and direct the litigation to the state where the child and his family have a closer connection. *See* Wyo. Stat. Ann. § 20–5–102. Thus, the Wyoming district court is required to relinquish jurisdiction to the Texas court for a determination of child custody. Because our resolution of Mother's first issue is determinative, we need not address Mother's remaining issues.

## CONCLUSION

[¶ 17]   Remanded to the district court for entry of an order in accord with this opinion.