# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 2

OCTOBER TERM, A.D. 2012

*January 9, 2013*

IN THE INTEREST OF NC and AM,
Minor Children,

SC and FC, III,

Appellants
(Respondents),

v.                                                              S-12-0139

STATE OF WYOMING, DEPARTMENT
OF FAMILY SERVICES,

Appellee
(Petitioner).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellants:*
> Timothy A. Eagler of Hallman, Eagler & Hunt, P.C., Greybull, WY and Jessica Loeper, Powell, WY.

*Representing Appellee:*
> Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; and Jared Crecelius, Senior Assistant Attorney General.

*Guardian ad Litem:*
> Dan S. Wilde, Guardian ad Litem Program, Cheyenne, WY.

*Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    This appeal arises from the district court's exercise of juvenile jurisdiction over neglect petitions filed on two Texas children whose maternal grandmother brought them to Wyoming after the children had been abused in Texas by their mother's boyfriend. The district court adjudicated the children as neglected, and the children's mother and her boyfriend appeal, contending that the district court did not have subject matter jurisdiction.

[¶2]    Because this case is an interstate child custody dispute, we hold that the district court erred in exercising jurisdiction pursuant to Wyoming's Child Protection Act. The district court had jurisdiction to respond to the immediate threat to the children, but that jurisdiction was as defined and limited by the temporary emergency jurisdiction provisions of Wyoming's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). We thus affirm in part, reverse in part, and remand for proceedings consistent with the direction herein.

## ISSUE

[¶3]    The children's mother and her boyfriend state the issue on appeal as follows:

> The issue before the Court is whether the juvenile court was correct in determining that it possessed the requisite subject matter jurisdiction to hear and determine the matter in controversy.

## FACTS

[¶4]    In April 2011, SC (Mother) was living in the Dallas, Texas area with her two girls, NC and AM, and her boyfriend, FC, III (FC). At that time, NC was four years old, and AM was three years old. On the 14th or 15th of April 2011, Mother contacted her mother, SR (Grandmother), who lives in Cody, Wyoming, and reported that her boyfriend, FC, had bitten her two children. Mother also took photographs of the girls' injuries using her cell phone and forwarded those to Grandmother.

[¶5]    Mother told Grandmother that she was going to report the abuse to law enforcement, take the children to a physician, and then move in with her sister, who also lived in the Dallas, Texas area. When Mother and the children moved in with Mother's sister, Mother's sister observed the bite marks on NC and AM. She described them as follows:

> A.    My sister ended up showing to me, and my fiancé ended up taking pictures off my cell phone. There

1

were several bite marks on [NC], deep bite marks, on her arm from her shoulder blades, the butt cheeks, the sides of the hips. [AM] had a couple on her, not as much as [NC] did, but [AM] had a few.

> Q. [AM] had a few what?
> A. Bite marks or bruises. She had a couple on her shoulder as well, on her left arm.

[¶6]    At some point, Mother reconciled with FC, and she and the children moved back in with him. In July 2011, Grandmother traveled to Texas to check on Mother and the children. She testified to her reasons for the trip and what she observed.

> A. Well, I went down because I was worried about the girls, and [SC] wouldn't tell me what the doctor said. And she just kept saying, well, the doctor was going to call the police. And she didn't have any answers, so I went down and stayed for a week.
>
> * * *
>
> Q. When you got down there in July, did you observe the girls at all?
> A. Yes.
>
> * * *
>
> Q. What did you notice at that time?
> A. The bruises – [NC] had bruises on both arms and on her bottom. And [AM] still had the bruises on her – along her chest or, you know, her side.

[¶7]    After a week in Texas, Grandmother went back to Wyoming, but with plans to return to pick up Mother and the children after Mother worked the two-week notice period she was required to give her employer. Grandmother explained:

> A. I came back home with plans to return.
> Q. So did you have plans to return? What prompted those plans?
> A. [SC] told me that he was increasingly abusive to the girls and to her. She said she knew she'd never get her life straightened out or be in a better situation as long as she was with [FC]. And she said, "Would you come and get me?"

[¶8]    Grandmother returned to Texas two weeks later, but when she arrived, Mother told her that she had decided to stay in Texas and try to work things out with her boyfriend. Mother, however, allowed Grandmother to take the two children back with her to

Wyoming, with the understanding that Mother would come to Wyoming to retrieve the children.

[¶9]   Shortly after returning to Wyoming, Grandmother contacted the Wyoming Department of Family Services (DFS), hoping "to find some way to protect the girls." DFS, in turn, contacted the Cody Police Department.  Detective Juliet Vibe of the Cody Police Department investigated the allegations of abuse and interviewed the children.  In her Affidavit of Probable Cause, Detective Vibe reported that neither law enforcement nor a family services agency in Texas had requested assistance from Wyoming. Detective Vibe's affidavit also detailed the discussion she had with Texas law enforcement concerning the abuse allegations.

> On September 14, 2011, I spoke with Detective Smeltzec of the Balch Springs, Police Department.  Detective Smeltzec advised that he interviewed both [SC] and her boyfriend, identified as [FC] about the marks.  Both [SC] and [FC] stated that the bite marks were from an unnamed nine (9) year old boy who used to live next door to them. Detective Smeltzec did not find their statements credible, but did not have enough information to proceed with a criminal investigation.  Detective Smeltzec emailed me a copy of his report.  I offered to interview the girls for Detective Smeltzec, but he advised that it would not be necessary for the case.

[¶10]  Following Detective Vibe's investigation, on October 4, 2011, the Park County Attorney's Office (the State) filed separate juvenile petitions on each of the girls alleging that each child was a neglected child as defined by Wyoming statute.  The petitions also requested a shelter care hearing, and on October 26, 2011, the district court held an initial appearance and shelter care hearing.

[¶11]  At the shelter care hearing, a number of individuals participated by telephone from Texas:  Mother; Mother's boyfriend, FC; Mother's Texas attorney, Mario Herrera; and the children's purported biological father, Raul M.  During the hearing, Mr. Herrera advised the district court of pending custody proceedings in Texas, and he contested the court's subject matter jurisdiction.

> MR. HERRERA:   Your Honor, I'm sorry to interrupt.  The biggest issue, I think, before you even get to the merits on the case, is the fact of the venue and the jurisdictional issue.  The fact is that there's been two petitions to the Court trying to terminate – or terminate the parental rights of both the parties.  Both children are subject to these. They were filed prior to any proceedings occurring in this

case, so continuing jurisdiction has been established with Texas.

[¶12] The State acknowledged that a current custody case was pending in Texas, but it disputed that those proceedings should affect the district court's jurisdiction to rule on the juvenile petitions before it. In responding to those arguments, Mr. Herrera further described the Texas proceedings.

> MR. HERRERA: * * *
> The two pending suits are going to directly affect each other. So even if – one way or the another (sic), we're going to have to respect and consolidate these into one case and one suit. And that's why we need to establish what's going to be the proper jurisdiction. And just considering all the other facts, the allegations were in Texas, there was already an investigation started in Texas, there was a suit filed in Texas. The children – the jurisdiction – even just the residence requirement, other than this allegation being made in Wyoming, there's no other – the children are still residents of Texas as of now.
> * * * *
> MR. HERRERA: Your Honor, the only – the only point I'd like to bring up is that although both the guardian ad litem and the State were making arguments that jurisdiction is not going to affect the custody, that it has nothing to do with the civil matter, the fact is the recommendation goes exactly to the heart of what the petitions in Texas are for. They're for custody. They're for visitation, possession and access. They are exactly what is being addressed in Texas. And being named the biological father, all those issues are going to be resolved within this proceeding.
> Additionally, the fact that the father was incarcerated is the only reason he hasn't been properly served. If he discloses and gives a proper address of where his residence is, we will have him served and he will be included in the parties and we'll get to the heart of the DNA analysis on the children. And especially because all parties are residents of Texas, we would be able to resolve all that.
> So, I just wanted to just make that last point, Your Honor, that although they were saying that the juvenile proceedings can go ahead and go and be heard without being affect – without affecting the civil proceedings, in this case it

4

can't, because it's exactly what the recommendation is. It goes against any orders of the Court.

Now, we are in the midst of filing the petitions. We've been having issues in serving the parties because we haven't had any contact with them. But once the parties are served, we can do an immediate temporary order and address all of this. And CPS can get involved, and all the proper parties can be involved, and we can get to the heart of the matter and the heart of the allegations here where the allegations are alleged.

[¶13] During the shelter care hearing, the district court did not address the tension between the Wyoming and Texas jurisdictions, and its only reference to the Texas proceeding was in the following exchange with the children's purported biological father:

[RAUL M.]: Your Honor, this is [Raul M.]. I heard briefly that you weren't sure – sorry. I wasn't sure who was speaking about me, speaking about my children. And I understand they're young, and I've been gone for a few years from their life, but how do I go about working myself back into their life? Because I'm – I'm right now getting myself financially ready, and I'm getting ready, and I was hoping to get them for Christmas. They are my daughters. The biological issue – I'm sure [SC] would agree, but [AM] was my biological daughter. The only reason I didn't sign the birth certificate is because I was incarcerated at the time.

THE COURT: I'm not going to get into that today. I think you just heard Mr. Herrera say that if he has your address, he will serve you so you can be part of that process down there and you can get all that sorted out.

[¶14] Acting pursuant to its jurisdiction under the Wyoming Child Protection Act, Wyo. Stat. Ann. § 14-3-401, *et seq.* (LexisNexis 2011), the district court accepted the State's recommendation regarding shelter care, and on November 29, 2011, the court entered an Order on Initial Appearance and Shelter Care Hearing for each petition. The orders directed that each child was to be placed in the legal and physical custody of DFS, with physical placement with Grandmother.

[¶15] SC and FC applied for and were granted separate court-appointed attorneys. On December 16, 2011, SC and FC filed a joint motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. With respect to subject matter jurisdiction, the motion argued for dismissal because the alleged abuse of the children occurred outside Wyoming and SC and FC reside outside Wyoming. The motion did not reference the pending Texas custody proceedings.

[¶16] On December 19, 2011, the district court held a hearing on the motion to dismiss and denied the motion. In denying the motion, the court explained:

> With respect to Wyoming being bound by Texas, I would agree with Mr. Struemke's position, we are not. But it's – it is an unusual case, and there is not a clear guideline from the Supreme Court. And I think in a case like that, the juvenile court is always going to be cautious and err on the side of the best interests of the children.
>
> If this were a case where we had a Texas judge contacting me and saying, "Judge, we think this needs to be appropriately heard in the state of Texas" because of whatever that court might determine, then it would be a different situation. We don't have that.
>
> And this may not be the home state, but this Court can still exercise jurisdiction when it is determined that it is appropriate and, again, in the best interests of the children. So I understand that it's a close call, but I think this Court is always going to err on the side [of] the children.

[¶17] On January 3, 2012, the district court held an adjudication hearing. SC and FC participated by telephone from Texas and also appeared through their appointed Wyoming attorneys. Raul M. also participated by telephone from Texas, as did Steven C., who was SC's former spouse and also claimed a paternal relationship with the children. Following the evidentiary adjudication hearing, the court entered findings that the children had been abused by FC and neglected by SC, and it adjudicated each child as a neglected child. The court then ordered that the children remain placed with Grandmother.

[¶18] On April 6, 2012, SC and FC timely filed their notice of appeal from the adjudication orders. On April 10, 2012, following a February 6, 2012 hearing, the district court entered an Order of Disposition for each child. In those orders, the court stated, in part:

> **THE COURT** reviewed the file in this matter and the Predispositional Study prepared by the Department of Family Services and the Court having heard comments of the parties, those present, and counsel regarding recommendations for disposition, and the Court being otherwise fully [informed] finds it would be contrary to the welfare and the best interest of the minor to be returned to the legal and physical custody of the home; reasonable efforts to prevent the removal of the

6

minor from the home were made but due to the out-of-state location of the minor's mother and her boyfriend needing to complete recommendation of the Department of Family Services, it has been determined that the least restrictive alternative and most therapeutic placement is for the minor to be in the legal and physical custody of the Department of Family Services, with physical placement with her maternal grandmother[.]

[¶19] The dispositional orders directed both SC and FC to participate in a number of DFS-approved counseling and instructional services. The orders also directed that DNA testing be performed on the children, and on Raul M. and Steven C., to establish paternity. In the event that paternity were established for Raul M. or Steven C., the order directed the established father to undergo specified substance abuse and psychological evaluations and any recommended counseling based on the results of those evaluations.

## STANDARD OF REVIEW

[¶20] On appeal, Mother and FC do not contest the district court's exercise of personal jurisdiction over them, or the sufficiency of the evidence supporting the court's neglect adjudication. Mother and FC limit their challenge on appeal to the court's subject matter jurisdiction to act on the juvenile petitions in this matter. This Court has said as follows concerning our review of subject matter jurisdiction:

> We conduct a *de novo* review of jurisdictional questions pursuant to "the inherent power, and the duty, to address jurisdictional defects on appeal...." *Gookin v. State Farm Fire & Cas. Ins. Co.*, 826 P.2d 229, 232 (Wyo. 1992). If a lower court acts without jurisdiction, "this court will notice the defect and have jurisdiction on appeal, not on the merits, but merely for the purpose of correcting the error of the lower court in maintaining the suit." *Gookin*, at 232.

*NMC v. JLW ex rel. NAW,* 2004 WY 56, ¶ 9, 90 P.3d 93, 96 (Wyo. 2004) (quoting *Pawlowski v. Pawlowski*, 925 P.2d 240, 242 (Wyo. 1996)); *see also Prickett v. Prickett*, 2007 WY 153, ¶ 9, 167 P.3d 661, 663 (Wyo. 2007); *Steele v. Neeman*, 6 P.3d 649, 653 (Wyo. 2000).

## DISCUSSION

[¶21] As indicated above, the district court exercised jurisdiction over the two neglect petitions pursuant to its juvenile court authority under Wyoming's Child Protection Act. The question we must answer is whether the court properly acted pursuant to its authority under that Act, or alternatively whether the court should have acted pursuant to its

authority under Wyoming's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Wyo. Stat. Ann. §§ 20-5-201, *et seq* (LexisNexis 2011).

[¶22] We note at the outset of our discussion, that Mother and FC object to consideration of the UCCJEA on appeal because the district court's jurisdiction under the Act is a new issue that was not raised before the district court and was asserted for the first time on appeal by the guardian ad litem. Mother and FC are correct that this Court normally does not address issues raised for the first time on appeal. *Nodine v. Jackson Hole Mt. Resort Corp.*, 2012 WY 72, ¶ 19, 277 P.3d 112, 117, n.2 (Wyo. 2012). "We recognize two exceptions to that rule, however, and will consider the issue if it raises jurisdictional questions or if it is of such a fundamental nature that it must be considered." *Id.* Because application of the UCCJEA is a jurisdictional question, we will address it.

A.    **Applicability of UCCJEA**

[¶23] The UCCJEA is the successor to the Uniform Child Custody Jurisdiction Act (UCCJA). The dominant objective of the act is "to eliminate the simultaneous exercise of jurisdiction over custody disputes by more than one state." *People ex rel. M.C.*, 94 P.3d 1220, 1223 (Colo. Ct. App. 2004). The UCCJEA's predecessor shared this same goal, and in applying that act, this Court explained the importance of adhering to its jurisdictional mandates:

> The uniform act was intended to help avoid conflict and competition among jurisdictions and instead focus on the well-being of affected children. Additionally, the uniform act promotes cooperation and communication among states to determine which jurisdiction can most effectively determine the best interests of the child.

*NMC*, ¶ 11, 90 P.3d at 96.

[¶24] While our Court has not expressly stated that jurisdiction over interstate child custody determinations must be exercised in accordance with the uniform act, that conclusion is implicit in our consistent application of the UCCJEA or its predecessor in such cases. *See, e.g., Prickett*, ¶ 10, 167 P.3d at 663; *NMC*, ¶ 11, 90 P.3d at 96; *Steele*, 6 P.3d at 655-656; *Weller v. Weller*, 960 P.2d 493, 494-495 (Wyo. 1998); *State ex rel. Griffin v. District Court*, 831 P.2d 233, 238 (Wyo. 1992). Other courts have been more explicit in holding that the UCCJEA dictates jurisdiction in multi-state child custody determinations. *See, e.g., Beauregard v. White*, 972 A.2d 619, 626 (R.I. 2009) ("[T]he UCCJEA * * * provides rules for determining the proper forum in child-custody proceedings that involve jurisdictional conflicts."); *In re Jorge G.*, 78 Cal. Rptr. 3d 552, 557 (Cal. App. 2nd Dist. 2008) ("The Act is the exclusive method of determining the

proper forum in custody disputes involving other jurisdictions and governs juvenile dependency proceedings."); *Feria v. Soto*, 990 So. 2d 418, 421 (Ala. Civ. App. 2008) ("The UCCJEA establishes the criteria for deciding which state's courts have subject-matter jurisdiction to make a child-custody decision in an interstate custody dispute."); *Devine v. Martens*, 263 S.W.3d 515, 520 (Ark. 2007) ("We have recognized that the UCCJEA is the exclusive method for determining the proper state for jurisdictional purposes in proceedings involving matters of child custody that involve other jurisdictions.").

[¶25] We now expressly state what is implicit in our consistent approach to multi-state child custody determinations: When a Wyoming court is presented with a child custody issue that implicates more than one state, the UCCJEA governs the Wyoming court's subject matter jurisdiction. The question remains in this case whether the juvenile neglect petitions on which the district court ruled are the types of custody determinations governed by the UCCJEA. Based on the Act's plain language, we answer this question in the affirmative.

[¶26] The UCCJEA defines a "child custody determination" to include any court order "providing for the legal custody, physical custody or visitation with respect to a child," including a temporary order. Wyo. Stat. Ann. § 20-5-202(a)(iii). The Act defines a "child custody proceeding" to include a proceeding for neglect, abuse or protection from domestic violence. Wyo. Stat. Ann. § 20-5-202(a)(iv). The petitions before the district court in this matter were neglect petitions seeking temporary custody orders to protect the children, and because the children were Texas residents visiting Wyoming, two state jurisdictions were implicated. The district court thus had before it an interstate child custody proceeding, and the court's jurisdiction was governed by the UCCJEA. As one North Carolina court summarized:

> The UCCJEA, formerly UCCJA, is a jurisdictional statute relating to child custody disputes and expressly includes proceedings in abuse, dependency, and/or neglect. *See In re Van Kooten*, 126 N.C.App. 764, 768, 487 S.E.2d 160, 162–63 (1997). The jurisdictional requirements of the UCCJEA must be satisfied for a court to have authority to adjudicate abuse, neglect, and dependency petitions filed pursuant to our Juvenile Code, *see id*. at 764, 487 S.E.2d at 163, even though the Juvenile Code provides that the district courts of North Carolina have "'exclusive, original jurisdiction over any case involving a juvenile who is alleged to be ... abused, neglected, or dependent.'" *In re Malone*, 129 N.C. App. 338, 342, 498 S.E.2d 836, 838 (1998) (alteration in original) (citation omitted). *See also In re Van Kooten* at 768, 487 S.E.2d at 162.

9

*In re Brode*, 566 S.E.2d 858, 860 (N.C. Ct. App. 2002); *see also NMC*, ¶¶ 14-15, 90 P.3d at 97 (applying UCCJA in review of Wyoming court's jurisdiction over child custody where father brought child from child's home state of Texas to Wyoming and alleged neglect by mother after her prescription medication overdose in Texas).

[¶27] Having determined that the UCCJEA is the applicable law, we turn then to the jurisdictional requirements of the UCCJEA.

## B.    UCCJEA Jurisdictional Requirements

[¶28] The UCCJEA expresses a "fundamental jurisdictional concept 'that the child's 'home state' should have preeminent authority to determine custody and visitation and that authority should be respected elsewhere.'" *NMC*, ¶ 13, 90 P.3d at 97 (quoting *Bruner v. Tadlock*, 338 Ark. 34, 991 S.W.2d 600, 604 (1999) (citing Robert A. Leflar, *American Conflicts of Law* § 243 (4th ed.1986)). A child's home state is "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." Wyo. Stat. Ann. § 20-5-202(a)(vii).

[¶29] A Wyoming court has jurisdiction to make an initial child custody determination if it is the home state on the date of the commencement of the custody proceeding, or was the home state of the child within six months before commencement of the proceeding and the child is absent from the state but a parent or person acting as a parent continues to live in the state. Wyo. Stat. Ann. § 20-5-301(a)(i). Otherwise, a Wyoming court has initial jurisdiction only if there is no other home state as defined by the UCCJEA, or the home state declines jurisdiction, and

> (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

> (B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.

Wyo. Stat. Ann. § 20-5-301(a)(ii) (LexisNexis 2011).

[¶30] From the record, it is clear in this case that Texas, not Wyoming, has initial custody jurisdiction under the UCCJEA. The children did not live in Wyoming for the six months preceding the filing of the juvenile neglect petition—they arrived in Wyoming in August 2011, and the neglect petitions were filed in October 2011. Additionally, the children lived in Texas until Grandmother brought them to Wyoming for a visit; Mother

lives in Texas; both purported fathers live in Texas; and a custody proceeding was pending in Texas when the children were brought to Wyoming.[1]

[¶31] Texas is the children's home state for purposes of the UCCJEA, and Texas has exercised initial child custody jurisdiction. Once a home state exercises its initial child custody jurisdiction, that state's jurisdiction is continuing and exclusive, unless it declines jurisdiction or the child is present in another state and it is necessary for the other state to exercise emergency jurisdiction for the child's protection. Wyo. Stat. Ann. §§ 20-5-302(a) and 20-5-304(a). Nothing in the record suggests that the Texas court has declined or otherwise ceded its custody jurisdiction. The district court thus did not have initial child custody jurisdiction, and its exercise of jurisdiction was proper only if it were acting pursuant to the UCCJEA emergency jurisdiction provisions.

[¶32] The question we must address then is whether the district court had jurisdiction over the juvenile petitions pursuant to the UCCJEA provisions governing emergency jurisdiction.

## C.    UCCJEA Emergency Jurisdiction

[¶33] The UCCJEA authorizes a court to exercise temporary emergency jurisdiction as follows:

> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, the child's sibling or a parent of the child is subjected to or threatened with mistreatment or abuse.

Wyo. Stat. Ann. § 20-5-304(a) (LexisNexis 2011).

[¶34] Based on this provision's plain terms, the only requirements for a state to exercise emergency jurisdiction pursuant to the UCCJEA are that the child be present in the state and that the child be subjected to or threatened with abuse. A Wyoming court's exercise of emergency jurisdiction under the UCCJEA does not depend on findings that the child is a resident of Wyoming or that the mistreatment, abuse or other conduct endangering the child occurred in Wyoming. *See NMC*, ¶¶ 3-4, 14-15, 90 P.3d at 94-95, 97 (recognizing Wyoming court's temporary emergency jurisdiction where child was

---

[1]   Although the record contains no documents from the Texas custody proceeding, Mother's Texas attorney informed the district court of the proceeding and described it as a custody proceeding, and the State acknowledged there was a pending Texas custody proceeding.

present in Wyoming but acts endangering child occurred in home state of Texas). As another court observed:

> In fact, temporary emergency jurisdiction will typically be invoked in just this type of case, in which a child is visiting from another state and an in-state relative becomes aware that the child may be at risk of mistreatment or abuse if she returns home. See, e.g., [*Micah M. v. Arizona Dept. of Economic Security* (May 13, 2008), Ariz.App. Div. 2, No. 2 CA-JV 2008-0006, at *3]; *MacDougall v. Acres* (1998), 427 Mass. 363, 693 N.E.2d 663.

*In re MB*, 2010 WL 3328018 at *2 (Ohio Ct. App. 2010).

[¶35] There is no question that the children, NC and AM, were present in Wyoming when the State filed the neglect petitions over which the district court exercised jurisdiction. The only question is whether the record supports a finding that the children were at risk of mistreatment or abuse if they were returned to their home in Texas.

[¶36] The UCCJEA does not define the terms mistreatment or abuse. Other states have observed that a court exercising emergency jurisdiction is acting in its capacity as *parens patriae* to protect a child within that state's borders. *In the interest of M.G.M.*, 163 S.W.3d 191, 197 (Tex. App. 2005); *In re State ex rel. M.C.*, 94 P.3d 1220, 1224 (Colo. Ct. App. 2004); *Tammie J.C. v. Robert T.R. (In re Thomas J.R.)*, 663 N.W.2d 734, 744 (Wis. 2003). We agree with this observation, and in this capacity, we believe it makes the most sense to apply Wyoming law in defining what constitutes abuse for purposes of determining emergency jurisdiction under the UCCJEA. *See Kalman v. Fuste*, 52 A.3d 1010, 1019-20 (Md. Ct. Spec. App. 2012) (applying Maryland law to define "abuse" under the UCCJEA); *Scott v. Somers*, 2007 WL 241067 n.3 (Conn. Super. Ct. 2007) (applying Connecticut law to define "abuse" under the UCCJEA).

[¶37] Wyoming law defines the term "abuse" to include the infliction of physical harm, including "skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment." Wyo. Stat. Ann. § 14-3-202(a)(ii)(B). Applying this definition, we turn to the evidence of abuse presented in this case.

[¶38] At the shelter care hearing, the district court had before it the investigating detective's Affidavit of Probable Cause. In that affidavit, Detective Vibe attested to her interviews of NC and AM, during which the children told her that Mother's boyfriend had bitten them. She also attested to the photographs of the children's injuries, which she had received from Grandmother, showing "significant bruising on one of the girl's buttocks and one of the girl's arms" and "teeth marks with severe bruising." Following the shelter care hearing, the district court found that because of the abuse allegations

12

against Mother's boyfriend, it would be contrary to the children's best interests and welfare if they were returned to Mother's custody, and the court ordered the children to be placed in Grandmother's custody.

[¶39] Approximately two months later, the district court held an adjudication hearing, which it conducted as a full evidentiary hearing. The evidence admitted during that hearing included: photographs of the children's bite wounds; the testimony of Mother's sister describing the children's bite wounds; a physician's testimony verifying that the wounds were bites inflicted by a teenage to adult-sized mouth; Mother's statements identifying her boyfriend as the perpetrator of the abuse; Mother's statement that FC "was increasingly abusive to the girls and to her;" Detective Vibe's testimony that during her interviews of the children, they identified Mother's boyfriend as the perpetrator of the abuse; and the testimony of Detective Vibe and Grandmother that the children were afraid of Mother's boyfriend.

[¶40] After taking evidence at the adjudication hearing, the court found that Mother's boyfriend had abused the children and Mother had neglected the children. Based on those findings, the court again concluded that it would be contrary to the children's best interests and welfare if they were returned to Mother's custody.

[¶41] We conclude that the district court had before it sufficient evidence to warrant emergency jurisdiction under the UCCJEA. *See Saavedra v. Schmidt*, 96 S.W.3d 533, 544 (Tex. App. 2002) ("[T]he possibility that allegations of immediate harm might be true is sufficient for a court to assume temporary emergency jurisdiction in the best interests of the child under the UCCJEA."). The evidence showed that the children had been abused while living in the Texas home Mother shared with her boyfriend, and the court had no evidence before it showing that steps had been taken to prevent a recurrence or continuation of that abuse. As the Alabama Court of Appeals found in a similar circumstance:

> In light of the mother's failure to produce evidence that the child would no longer be exposed to potential abuse by her boyfriend, the trial court did not exceed its discretion when it concluded from the evidence presented, or the lack thereof, that the threat of mistreatment or abuse of the child continued to exist. Therefore, the trial court properly exercised temporary emergency jurisdiction in the instant case.

*Feria*, 990 So.2d at 422; *see also In re Jaheim B.*, 87 Cal. Rptr. 3d 504, 508 (Cal. App. 4th Dist. 2008) (emergency jurisdiction appropriate "as long as the reasons underlying the dependency exist"); *In re Nada R.*, 108 Cal. Rptr. 2d 493, 500 (Cal. App. 4th Dist. 2001) ("If the risk of harm creating the emergency is ongoing, then the court should be afforded jurisdiction to prevent such harm. That appears to be the case here.").

13

[¶42]  Having concluded that the district court had temporary emergency jurisdiction to enter an order for the protection of NC and AM, we next review whether the court's exercise of that jurisdiction was in compliance with the limitations the UCCJEA places on such jurisdiction.

## D.    Limitations on UCCJEA Emergency Jurisdiction

[¶43]  Emergency jurisdiction under the UCCJEA is temporary and limited.  *NMC*, ¶ 14, 90 P.3d at 97.  It does not include the authority to make permanent custody determinations.  *In re State ex rel. M.C.*, 94 P.3d at 1225; *In re Brode*, 566 S.E.2d at 860-861; *In re C.T.*, 121 Cal.Rptr.2d 897, 904 (Cal. Ct. App. 2002).  Instead, if a custody proceeding is pending in another state, the UCCJEA imposes the following limitations and requirements on a court's exercise of emergency jurisdiction:

> (c)  If there is a previous child custody determination that is entitled to be enforced under this act, or a child custody proceeding has been commenced in a court of a state having jurisdiction under a provision of law from that state that is in substantial conformity with W.S. 20-5-301 through 20-5-303, ***any order issued by a court of this state under this section shall specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under a provision of law from that state that is in substantial conformity with W.S. 20-5-301 through 20-5-303. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.***

> (d)  ***A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state having jurisdiction under a provision of law from that state that is in substantial conformity with  W.S. 20-5-301  through  20-5-303, shall immediately communicate with the other court.*** A court of this state which is exercising jurisdiction pursuant to W.S. 20-5-301  through  20-5-303, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the

14

emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order.

Wyo. Stat. Ann. § 20-5-304 (LexisNexis 2011) (emphasis added).

[¶44]   We conclude that the district court's exercise of jurisdiction in this matter and the orders it entered were not in conformity with the UCCJEA's requirements and limitations.  The district court proceeded with this action as if it were ruling on typical neglect petitions, an approach which is contrary to the above-quoted limitations on the court's authority.  As one California case explains:

> "When a petition contains allegations of an emergency situation, a court may properly issue an interim custody order to protect the child pending a hearing."  (*In re Joseph D.*, *supra*, 19 Cal.App.4th 678, 688-689, 23 Cal.Rptr.2d 574.)  The possibility that the allegations of immediate harm might be true  [is]  sufficient  for  the  juvenile  court  to  assume emergency jurisdiction under the UCCJA.  (*Id.*, at p. 688, 23 Cal.Rptr.2d 574.)  Moreover, after issuing an interim custody order, it is proper for the juvenile court to conduct a plenary hearing to determine if an emergency exists.  (*Id.*, at p. 689, 23 Cal.Rptr.2d 574.)

> * * * *

> In the instant case, the juvenile court proceeded with this matter as though it were a typical dependency proceeding.  At the November 6 hearing, the juvenile court sustained the amended petition on the basis appellant physically and emotionally abused Christopher.  Accordingly, we deem the adjudication findings of November 6 to be the juvenile court's determination after a plenary hearing that an emergency actually existed. Furthermore, we conclude sufficient grounds existed for the court to have assumed emergency jurisdiction under the UCCJEA.

> Under the UCCJEA, the only jurisdiction the juvenile court had was to find an emergency existed. Thus, the juvenile court was without jurisdiction to enter adjudication and disposition orders. Pursuant to the UCCJEA, prior to proceeding to the disposition, the juvenile court should have contacted the Alabama Court which issued the original custody order, informed the Alabama Court of the juvenile

15

court's findings, and deferred jurisdiction to the Alabama Court. (*In re Joseph D.*, *supra*, 19 Cal.App.4th 678, 693, 23 Cal.Rptr.2d 574.).

*In re Christopher C.*, 2002 WL 80290 at \*3 (Cal. Ct. App. 2002).

[¶45]  The district court was presented with petitions alleging abuse of NC and AM. Pursuant to its emergency jurisdiction, and based on its preliminary finding of abuse, the district court had authority to order protective custody for NC and AM.  To the extent that the court's shelter care orders resulted in a preliminary finding of abuse and protective custody based on that finding, and the adjudication orders resulted in an evidentiary finding of abuse and protective custody based on that finding, we conclude that the district court acted consistent with its emergency jurisdiction under the UCCJEA. To the extent that the district court's orders went beyond addressing the immediate emergency before the court, we conclude that the court acted outside its jurisdiction. That is, to the extent the district court adjudicated the children as neglected and entered orders, including its dispositional order, directing Mother, her boyfriend, and the two purported fathers to submit to testing, evaluations and counseling and psychological services, the court exceeded its emergency jurisdiction under the UCCJEA.  *See In re State ex rel. M.C.*, 94 P.3d at 1225 ("[E]xercise of temporary emergency jurisdiction may not last until the trial court can enter an adjudicatory order finding a child dependent and neglected.").

[¶46]  We remand for entry of orders that comply with the UCCJEA provisions governing a court's exercise of emergency jurisdiction.  First, the district court shall immediately contact the Texas court that has concurrent jurisdiction over the children's custody.  Wyo. Stat. Ann. § 20-5-304(d).  In that regard, we anticipate the district court will find a receptive audience with the Texas court.  Texas has adopted the UCCJEA and has expressed a commitment to cooperating with its sister states to reach informed custody decisions.

> Once a court assumes temporary emergency jurisdiction, it has a duty to communicate with the other state that has asserted custody jurisdiction and to retain a record of those communications.   Tex.  Fam.  Code Ann. §§ 152.110(f), .204(d).   This mandatory duty of cooperation between the courts of different states is the hallmark of the UCCJEA; it is this cooperation that is intended to lead to an informed decision on custody.  *Joseph D.*, 23 Cal. Rptr. 2d at 583 (quoting *Fry v. Ball*, 190 Colo. 128, 544 P.2d 402, 407 (1975); *Guardianship of Donaldson*, 178 Cal. App. 3d 477, 223 Cal. Rptr. 707, 714 (1986)).   One of the reasons for consulting with the other state's court is to determine the

16

duration of the temporary order. Tex. Fam. Code Ann. § 152.204(d); *In re C. T.*, 100 Cal. App. 4th 101, 121 Cal. Rptr. 2d 897, 906 (2002); *see also* Patricia M. Hoff, *The ABC's of the UCCJEA: Interstate Child–Custody Practice Under the New Act*, 32 Fam. L.Q. 267, 284 (1998). The court exercising exclusive continuing jurisdiction has the reciprocal duty to communicate with the court exercising emergency jurisdiction. Tex. Fam. Code Ann. § 152.204(d); *see also* Hoff, *supra*, at 284.

*Saavedra*, 96 S.W.3d at 545.

[¶47] Following communication with the Texas court, the district court shall issue amended protective custody orders, which orders shall specify that they are temporary in nature and shall specify an expiration date, based on the Texas court's indication of when it is able to assume jurisdiction of the abuse and neglect allegations. Wyo. Stat. Ann. § 20-5-304(c); *see also Beauregard*, 972 A.2d at 631 (order cannot be of indeterminate longevity and must specify that it is a temporary order); *In re Brode*, 566 S.E.2d at 861-862 (court erred in issuing order "void of any language to indicate that it is temporary in nature"); *In re M.G.M.*, 163 S.W.3d at 197 ("[A]ny order issued under emergency circumstances must be temporary in nature, and the order must specify a period that the court considers adequate to obtain an order from the state with jurisdiction."). The orders shall be limited in scope to only those terms necessary to provide the children emergency protection from abuse.

[¶48] Our conclusion as to those aspects of the orders that exceeded the district court's emergency jurisdiction versus those that were a proper exercise of the court's jurisdiction is illustrated by the following Texas court holding:

> To sum up, we find that the trial court had temporary emergency jurisdiction under section 152.204(a) to enter a temporary protective order limited in scope to provisions that would ensure the physical safety of Corinne and the children. Having learned of the pending divorce proceeding in Michigan, and having determined from the face of Corinne's application and affidavit that Michigan was the home state of the children under the provisions of Chapter 152, the trial court was limited in taking any further action with regard to the temporary protective order until it communicated with the Michigan court in which the divorce proceeding was pending. See Tex. Fam. Code Ann. §§ 152.204(c), 152.206(b) (Vernon 2002). Failing to communicate with the appropriate Michigan court was error.

17

It was also error to include in the July 30, 2003, protective order any conditions directed to Matthew that were not reasonably related to emergency protection from family violence, such as (1) conditions referring to "property mutually owned or leased by the parties," (2) the awarding of child support payments of $199.69 to Corinne, and (3) the completion of a "battering  intervention and prevention program" and the reporting of said completion to the trial court.  As to these three provisions, the trial court exceeded the scope of its temporary jurisdiction and said provisions are therefore void.  The remaining provisions reasonably relating to the protection of Corinne and the children from family violence continue in full force and effect as they were a product of the trial court's temporary jurisdiction under section 152.204(a).

*In re M.G.M.,* 163 S.W.3d at 199-200.

## CONCLUSION

[¶49]  The neglect petitions filed with the district court in this case presented the court with an interstate child custody dispute, and the district court thus erred in exercising jurisdiction pursuant to Wyoming's Child Protection Act.  Because the district court had emergency jurisdiction under the UCCJEA to respond to the immediate threat to NC and AM, we affirm the district court's findings that the children were abused and that Mother had not protected the children from that abuse.  We likewise affirm the district court's entry of protective custody orders based on those findings.  We vacate the remainder of the court's orders, including its formal adjudications of abuse and neglect, and its orders of disposition.  We thus affirm in part, reverse in part, and remand for proceedings consistent with the direction herein.