# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 149

OCTOBER TERM, A.D. 2013

_December 10, 2013_

CHRISTOPHER
HARIGNORDOQUY,

Appellant
(Defendant),

v.

LEE ANN BARLOW,

Appellee
(Plaintiff).

S-13-0076

_Appeal from the District Court of Teton County_
_The Honorable Timothy C. Day, Judge_

_Representing Appellant:_
    Christopher Harignordoquy, _pro se_

_Representing Appellee:_
    Lea Kuvinka of Kuvinka & Kuvinka, P.C., Jackson, Wyoming

_Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ._

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    The parties to this appeal were divorced in the District Court for the Ninth Judicial District (Teton County).  Appellant Christopher Harignordoquy contends that the district court erred in exercising child custody jurisdiction, in the determination as to whether his children might be entitled to possible dual citizenship as that finding might relate to child custody, in requiring a bond to permit visitation and limiting visitation to Teton County, and in other respects.  Finding no error, we affirm.  We also find no reasonable cause for the appeal, and therefore assess Appellee's costs, attorney fees and damages against Appellant as provided in Wyoming Rule of Appellate Procedure 10.05.

## ISSUES

[¶2]    1.    Did Wyoming have home state jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act so as to permit the district court to make a custody determination?

2.    Did the district court abuse its discretion in its custody and visitation decision because it found it unlikely that the parties' children would obtain dual French citizenship if it awarded Appellant custody or increased visitation?

3.    Are any of Appellant's other arguments adequately supported by pertinent authority or cogent argument so as to permit review?

4.    Is Appellee entitled to an award of sanctions under Wyoming Rule of Appellate Procedure 10.05?

## FACTS

[¶3]    Christopher Harignordoquy and Lee Ann Barlow were married in Teton County in October of 2002.  Ms. Barlow is a United States citizen.  Mr. Harignordoquy is a citizen of both France and the United States.  The parties executed a prenuptial agreement before they married.

[¶4]    The couple decided to have children and arranged a surrogate pregnancy, the details of which need not be discussed here.  Twins were born to a surrogate mother in Colorado in late August of 2010.  The parties returned to Teton County with the twins on September 7, 2010, and Ms. Barlow and the children have since remained there.

[¶5]    On March 1, 2011, Ms. Barlow petitioned the Teton County circuit court for a domestic violence protection order against Mr. Harignordoquy.  She claimed that he pushed her to the ground and threatened her.  The circuit court issued the requested order, which awarded Ms. Barlow temporary custody of the twins and temporary possession of

1

the family residence.  Ms. Barlow filed for divorce in the Teton County district court on March 11, 2011.  Mr. Harignordoquy moved to France in April of 2011 and has resided there since.

[¶6]    Ms. Barlow filed a motion for partial summary judgment which sought to have the prenuptial agreement declared valid and enforceable.  Mr. Harignordoquy filed a pro se objection, claiming that Barlow was concealing marital assets, which evidently meant that he originally intended to contest the validity of the agreement.  However, he later told the district court that he would not in fact contest the prenuptial agreement, and it therefore entered an order finding the prenuptial agreement valid and enforceable.

[¶7]    Mr. Harignordoquy then filed a motion to disqualify the district judge and guardian *ad litem* ("GAL") in August of 2011. He claimed that the judge had improper connections with the Barlow family, and that the GAL was biased because he worked with a friend of Ms. Barlow's at Central Wyoming College's outreach campus in Jackson.  He also titled the motion an interlocutory appeal, but it was never filed or docketed in this Court.

[¶8]    The district judge entered an order denying the motion to disqualify him because Mr. Harignordoquy failed to support it with the required affidavits.  *See* W.R.C.P. 40.1(b)(2) (motion for disqualification of district judge "shall be supported by an affidavit or affIdavits)"  The district judge stated that he was "not . . . prejudiced for or against any party in the matter," and the GAL also denied any connections with the Barlow family.   The court therefore denied the motion.   It also ordered Mr. Harignordoquy to refrain from further threats, personal attacks, and uncivil conduct.  No transcript of the hearing on the motion is available in the record on appeal, although it was apparently reported.

[¶9]    The divorce trial took place in November of 2012.  Mr. Harignordoquy appeared by video teleconference from France, representing himself.  These proceedings were reported but not transcribed, and we must therefore rely upon the decree of divorce to determine what occurred in the trial.

[¶10]  The court entered the decree on March 13, 2013.  Because it had previously ruled that the prenuptial agreement was enforceable based on Mr. Harignordoquy's concession that it was, it divided the parties' property in accordance with that agreement.  The court awarded Ms. Barlow sole custody of the children. It noted that Mr. Harignordoquy testified that he would find "some way to free them [the children]," which it found to be a threat to remove the children from this country.  It therefore allowed Mr. Harignordoquy up to six weeks of visitation per year to be exercised only in Teton County, and provided in the decree that visitation can only be exercised if he posts a $25,000 bond and surrenders all of his passports.  It ordered him to pay $474 in monthly child support.

[¶11] Throughout the district court proceedings, Mr. Harignordoquy claimed to be the victim of a conspiracy between Ms. Barlow's family and the judiciary. The court reiterated that it was "not prejudiced for or against any party in this case, and that [Mr. Harignordoquy's] assertions of conspiratorial prejudice lack any basis in fact or evidence." This appeal was timely perfected.

## DISCUSSION

### Child Custody Proceedings

[¶12] Mr. Harignordoquy first claims that Wyoming did not have "home state" jurisdiction for child custody under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). He argues that the action commenced when Ms. Barlow petitioned the circuit court for a protective order on March 1, 2011, which was less than six months after the parties returned to Teton County on September 7, 2010. He contends that there was no emergency child custody jurisdiction because he denied perpetrating any domestic violence. He also contends that Ms. Barlow manipulated the circuit court proceedings, and claims that the parties signed an agreement making Colorado their home.

[¶13] The UCCJEA governs subject matter jurisdiction when a Wyoming court is presented with a child custody proceeding in which the courts of another state may also have jurisdiction. *In re NC*, 2013 WY 2, ¶¶ 25–26, 294 P.3d 866, 873 (Wyo. 2013). It expresses a "fundamental jurisdictional concept that the child's 'home state' should have preeminent authority to determine custody and visitation and that authority should be respected elsewhere." *Id.* at ¶ 28 (quoting *NMC v. JLW ex rel. NAW*, 2004 WY 56, ¶ 13, 90 P.3d 93, 97 (Wyo. 2004)) (internal quotation marks omitted). A child's home state is "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." *See* Wyo. Stat. Ann. § 20-5-202(a)(vii) (LexisNexis 2013).

[¶14] The district court found that Mr. Harignordoquy consented to the circuit court's jurisdiction, and it noted that the circuit court domestic violence action was completely separate from the divorce proceedings. The court also found that the parties never ceased to reside in Wyoming for UCCJEA purposes. They were in Colorado only for the birth of their children and associated medical care. The court further noted that Ms. Barlow filed for divorce on March 11, 2011, which was slightly more than six months after the parties returned to Wyoming on September 7, 2010. It concluded that it had jurisdiction over the parties and the children.

[¶15] The principal purposes of the UCCJEA are to resolve jurisdictional disputes and avoid the inconsistent child custody orders between the courts of this and other states. *See* Wyo. Stat. Ann. §§ 20-5-306 through 308 (LexisNexis 2013) (providing for

consultation between courts with duplicative custody litigation pending, *forum non conveniens* criteria, and a specification of conduct which justifies declining jurisdiction under the Act); *see also NC*, ¶ 23, 294 P.3d at 872. There is no indication that Mr. Harnignordoquy initiated child custody proceedings in Colorado, and so there were no competing proceedings which would have required a determination of a proper forum between competing alternatives.

[¶16] We ordinarily review a district court's decision regarding jurisdiction in child custody matters de novo. *Prickett v. Prickett*, 2007 WY 153, ¶ 9, 167 P.3d 661, 663 (Wyo. 2007) (citing *Ritter v. Ritter*, 989 P.2d 109, 111 (Wyo. 1999)); *see also NC*, ¶ 20, 294 P.3d at 872. In some cases, the identification of the home state under the UCCJEA requires the trial court to determine where a child has resided, and for how long. We review a district court's findings of fact using a clearly erroneous standard. *Redland v. Redland*, 2012 WY 148, ¶ 48, 288 P.3d 1173, 1185 (Wyo. 2012) (citation omitted); *see also Davis v. Gill*, 2007 WY 17, ¶¶ 5–8, 150 P.3d 1181, 1182–83 (Wyo. 2007) (jurisdictional review under the UCCJEA's predecessor requires review of a district court's factual findings for clear error).

[¶17] However, "[i]f an appellant intends to assert on appeal that a finding or conclusion is unsupported by the evidence or contrary to the evidence, appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." W.R.A.P. 3.02(b). Failure to provide a transcript does not necessarily require dismissal of an appeal, but "our review is restricted to the allegations of error that do not require a review of the evidence presented before the district court that has been memorialized in the transcript." *Golden v. Guion*, 2013 WY 45, ¶ 6, 299 P.3d 95, 97 (Wyo. 2013) (quoting *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo. 1996)). Without the necessary transcript or approved statement of the evidence, we "presume that there were no irregularities in the district court's judgment, and that it was reasonably based on competent and sufficient evidence." *Roberts v. Locke*, 2013 WY 73, ¶ 27, 304 P.3d 116, 122 (Wyo. 2013) (citations omitted) (footnote omitted).

[¶18] Mr. Harignordoquy did not request that the reporter prepare a transcript of the divorce trial to be included in the record or make arrangements to pay for it. We therefore presume that the testimony and evidence presented supports the district court's decision. We can ascertain from the limited record before us that the parties returned to Teton County on September 7, 2010, and that Ms. Barlow filed for divorce on March 11, 2011. This is slightly more than six months, just as the district court found, and there would be home state jurisdiction if only for that reason.

[¶19] Mr. Harignordoquy complains of the circuit judge's decision on the temporary order, but he did not appeal that ruling to the district court. We therefore decline to

4

review any aspect of the circuit court proceedings.[1]  We find no error in the district court's determination that it had jurisdiction to resolve the parties' custody dispute.

### *Children's Citizenship*

[¶20]  Appellant argued below that he should be granted custody or expansive visitation in France because the children either are French citizens or could become French citizens, in addition to being United States citizens.  Although the institutions and courts of France have exclusive authority to determine whether the twins will have citizenship there,[2] the district court considered Mr. Harignordoquy's contention within the framework of factors specified in Wyoming Statute § 20-2-201.[3]  These factors are to be weighed when

---

[1] The district court's findings about the circuit court proceedings appear to be an explanation for Mr. Harignordoquy's benefit, rather than any substantive aspect of its decision.  Wyoming Statute § 5-2-119 provides that appeals from the circuit courts are to the district courts.  Wyo. Stat. Ann. § 5-2-119 (LexisNexis 2013). The proceedings in district court were not an appeal of the circuit court's decision, although the domestic violence protection order was a topic of discussion.

[2] *See, e.g.*, *Dual Nationality*, U.S. Department of State, *available at* http://travel.state.gov/travel /cis_pa_tw /cis/cis_1753.html ("Each country has its own citizenship laws based on its own policy.").

[3] The pertinent portion of that statute provides as follows:

> (a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14-2-401 through 14-2-907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children.  In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>
> (i) The quality of the relationship each child has with each parent;
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
> (iii) The relative competency and fitness of each parent;
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

5

determining the best interests of a child whose custody is disputed, and the district court analyzed the application of each in detail.

[¶21] According to the decree, Ms. Barlow presented expert testimony that the twins may not be able to obtain French citizenship under any circumstances because of their surrogate parentage. The district court found as follows:

> [E]xpert opinion at trial was that even if the children were raised in France, as the law currently stands, they would not be entitled to French citizenship, so their status in the country upon reaching majority is uncertain.
>
> .   .   .
>
> [T]he children would not … have a path to French citizenship simply because their father … is French. . . . [B]eing raised in the country where they . . . will be able to enjoy the rights and privileges of full citizenship as children and as adults is a factor that weighs in favor of custody with [Ms. Barlow].

*See* § 20-2-201(a) (court may consider "[a]ny other factors the court deems necessary and relevant" in determining the best interests of the child). The court left the door open for Appellant to seek visitation outside of Teton County when the children are older and can benefit from the experience.

[¶ 22] Mr. Harignordoquy contends that the district court erred in ruling that the children were not French citizens. He claims that the children are entitled to French citizenship under foreign law because he is their biological parent. We interpret his rather obscure

---

> (viii) Geographic distance between the parents' residences;
> (ix) The current physical and mental ability of each parent to care for each child;
> (x) Any other factors the court deems necessary and relevant.
>
> (b) In any proceeding in which the custody of a child is at issue the court shall not prefer one (1) parent as a custodian solely because of gender.
>
> (c) The court shall consider evidence of spousal abuse or child abuse as being contrary to the best interest of the children. If the court finds that family violence has occurred, the court shall make arrangements for visitation that best protects the children and the abused spouse from further harm.

Wyo. Stat. Ann. § 20-2-201 (LexisNexis 2013).

argument to be that the district court abused its discretion because it did not properly consider or weigh the benefit of possible dual citizenship. To the extent that this issue presents a question of fact, our standard of review is as follows:

> This Court has consistently recognized the broad discretion enjoyed by a district court in child custody matters. We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Walker v. Walker*, 2013 WY 132, ¶ 22, 311 P.3d 170, 176 (Wyo. 2013) (quoting *Durfee v. Durfee,* 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009)).

[¶23] To the extent that the dual citizenship issue raises a question of law, our review is de novo. *Id.* at ¶ 36, 311 P.3d at 177–78. Regardless of how we characterize the issue, however, the record before us is insufficient. As to the question of whether the twins might or might not have or obtain dual citizenship, for whatever value it had in the trial court's custody determination, we recently summarized the pertinent standards for proof of foreign law as follows:

> Under Wyoming Rule of Civil Procedure 44.1 and the comparable federal rule, neither Wyoming's courts nor those of the United States will take judicial notice of the laws of a foreign country. Consequently, litigants who wish to take advantage of allegedly applicable foreign law must plead and prove it or have their cases determined in accordance with the law of the forum court.
>
> Wyoming statutes specify the proof of foreign law a litigant must provide. With respect to foreign written laws, a litigant must provide printed copies of those laws and show that they were published upon the authority of its government, or that they are in a form commonly accepted in that country's courts as evidence of the existing law. As to the unwritten or common law of a foreign country, the proponent must provide either admissible parol evidence or the books of

7

reported cases adjudicated in that country's courts. Wyo. Stat. Ann. §§ 1-12-301 through 306 (LexisNexis 2011).

*Roberts*, ¶¶ 21–22, 304 P.3d at 121 (additional citations omitted).

[¶24] Mr. Harignordoquy's brief refers to what he claims to be the French civil code, a purported order from the French Attorney General, and a foreign news article. He failed to comply with any of the statutory requirements for proof of foreign law, and we have no trial transcript which would allow further review of the district court's findings of fact to determine if he presented evidence bearing on the question of French law as Ms. Barlow did. Under the circumstances, the district judge acted well within his discretion in declining to assign any significant weight to the children's citizenship. We consequently affirm the district court as to custody and visitation.

### Other Issues

[¶25] Mr. Harignordoquy also claims that the district judge pressured him to waive his challenge to the prenuptial agreement, and argues that the custody decision does not account for what he claims to be an extensive history of domestic violence by Ms. Barlow. He further contends the district court erred in denying his motion for disqualification because the Barlow family manipulated the court proceedings. Finally, he claims that the district court erred when it awarded child support because it ignored "multiple explanations" that his French work contract precludes him from working while on parental leave.

[¶26] All of these arguments challenge the factual bases for the district court's discretionary decisions. As explained above, we have no transcript which would allow us to review the facts that led the district judge to rule as he did. We must therefore decline to address these issues and presume that the district court had sufficient evidence before it to support its decision. *Roberts*, ¶ 27, 304 P.3d at 122; *see also Rohrer v. Bureaus Inv., Grp. No. 7, LLC*, 2010 WY 96, ¶ 13, 235 P.3d 861, 866 (Wyo. 2010) (judicial discretion means a "sound judgment exercised with regard to what is right **under the circumstances**") (emphasis added) (citation omitted).

[¶27] Mr. Harignordoquy also raises the constitutionality of the visitation bond as a potential issue. However, he does not develop this argument, and instead expounds on his belief that he is the victim of an elaborate conspiracy. None of these contentions are supported by the record. Without cogent argument or pertinent authority relating to the visitation bond decision, we will not address any claimed error related to it. *See, e.g., Sonnett v. First Am. Title Ins. Co.*, 2013 WY 106, ¶ 26, 309 P.3d 799, 808 (Wyo. 2013) (quoting *Elder v. Jones*, 608 P.2d 654, 660 (Wyo. 1980)) ("It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there."); *Dechert v. Christopulos*, 604 P.2d 1039, 1044 (Wyo. 1980) ("It is a long-standing rule of

this court that we will not consider an issue which is not supported by authority or cogent argument.").[4]

*Sanctions*

[¶28] Ms. Barlow seeks sanctions under W.R.A.P. 10.05, claiming that Mr. Harignordoquy's appeal is not supported by cogent argument, pertinent authority, or citations to the record. Rule 10.05 provides that "[i]f the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." Rule 10.05 sanctions are generally not available for challenges to discretionary rulings, unless "an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record." *Welch v. Welch*, 2003 WY 168, ¶ 13, 81 P.3d 937, 940 (Wyo. 2003) (summarizing the case law regarding appellate sanctions) (citations omitted). *See also Stadtfeld*, 920 P.2d at 664 ("Without a proper factual record, this Court cannot certify a reasonable cause for an appeal claiming an abuse of discretion.") (citation omitted).

[¶29] United States Supreme Court Justice Felix Frankfurter once observed that "defeated litigants, no matter how fairly treated, do not always have the feeling that they have received justice." *N.L.R.B. v. Donnelly Garment Co.*, 330 U.S. 219, 237, 67 S. Ct. 756, 765, 91 L. Ed. 854 (1947). Appellant's brief reflects this kind of disappointment. Although we can well understand the frustration of a parent whose ability to see his children has been limited, this is not a forum in which to vent that emotion. Appellant's brief is devoid of cogent argument to support his claims of error, and it also contains an assortment of veiled threats, bizarre conspiracy theories, and unsupported and scandalous allegations against several public officials. Our efforts to distill a potentially meritorious issue from the brief have been fruitless.

[¶30] While we exercise a degree of patience with self-represented litigants, we still expect reasonable compliance with the rules of appellate procedure. *Call v. Town of Thayne*, 2012 WY 149, ¶ 15, 288 P.3d 1214, 1217 (Wyo. 2012); *Young v. State*, 2002 WY 68, ¶ 9, 46 P.3d 295, 297 (Wyo. 2002) (citing *Hodgins v. State*, 1 P.3d 1259, 1262 (Wyo. 2000)). We find that the "rare circumstances" discussed in *Welch* exist in this case, and that we can certify no reasonable cause for this appeal. We will therefore award Ms. Barlow her reasonable costs, attorney fees, and damages allowed by Rule 10.05 upon submission of a proper application.

---

[4] We note in passing that we recently approved a $50,000 visitation bond in a similar case that posed a realistic possibility of international child abduction. *Stonham v. Widiastuti*, 2003 WY 157, ¶¶ 28–29, 79 P.3d 1188, 1197–98 (Wyo. 2003).

## CONCLUSION

[¶31]  We find no error in the district court's rulings, and we therefore affirm.  We also award Appellee costs, attorney fees, and damages against Appellant as provided in Wyoming Rule of Appellate Procedure 10.05.