2016 WY 58

**Shad Alan BATES and Trisha Diane Bates, husband and wife, Appellants (Defendants),**

v.

**The CHICAGO LUMBER COMPANY OF OMAHA, doing business as Century Lumber Center, Appellee (Plaintiff).**

**The Chicago Lumber Company of Omaha, doing business as Century Lumber Center, Appellant (Plaintiff),**

v.

**Shad Alan Bates and Trisha Diane Bates, husband and wife, Appellees (Defendants).**

S–15–0206, S–15–0207

Supreme Court of Wyoming.

June 9, 2016

Representing Shad Alan Bates and Trisha Diane Bates: James A. Eddington, Jones & Eddington Law Offices, Torrington, Wyoming.

Representing Chicago Lumber Company of Omaha: John J. Maier, John J. Maier Law Offices, Torrington, Wyoming.

Before BURKE, C.J., and HILL, DAVIS, and FOX, JJ., and ROGERS, D.J.

DAVIS, Justice.

[¶1] Appellee Chicago Lumber Company of Omaha, doing business as Century Lumber Center (Century), supplied materials to a contractor, Anderson Carpentry and Construction (Anderson), which built a home for the Appellants Shad and Trisha Bates (the Bates). Although the Bates paid Anderson for the materials used in the home, those funds were applied to various other accounts, which caused the account with Century on the Bates job to become delinquent. Century ultimately filed a material lien against the Bates property and instituted proceedings to enforce it. The district court enforced the lien as requested. We reverse.

## ISSUES

[¶2] The parties collectively raise four issues:

1. Did the district court err as a matter of law when it granted Century Lumber's *Motion for Partial Summary Judgment* concerning the validity of the lien?

2. Did the district court abuse its discretion by finding that Century Lumber timely filed its lien and that the work or materials were furnished under the same contract?

3. Did the district court err in concluding that the inclusion of materials and nonlienable charges in the recorded lien did not cause the lien in this matter to be a false and frivolous lien?

4. Did the district court err in determining that prejudgment interest cannot be included in a materialman's lien?

[¶3] We find the answer to the second issue as to the timeliness of Century's lien to be dispositive, and thus address only that issue.

## FACTS

[¶4] For reasons that are explained in connection with our discussion of the standard of review, we look to a decision letter and order granting a partial summary judgment and an order after a bench trial on the remaining issues for the facts of this case. The Bates purchased real property in Goshen County, Wyoming in June of 2010. Sometime before October 15, 2010, they contracted with Anderson to serve as the general contractor in the construction of a home and other improvements to the property. The Bates ultimately paid Anderson $249,800.00, a portion of which was to be used to purchase building materials.

[¶5] Anderson contracted with Century to purchase the necessary supplies and raw materials to build the Bates home. The two companies had a long-standing business relationship, and Anderson kept an open master account with Century to make charges as needed. The Bates construction project was opened as a subaccount of Anderson's master account, which, as we will see, initially allowed Anderson to charge materials for that job and pay for them later. Century first provided materials to Anderson for the Bates project on or about October 15, 2010.

[¶6] Century had two different methods for applying payments it received from contractors. If Century received a "generic" payment, meaning one not specified as applying to a particular account, it first applied the funds to the contractor's oldest outstanding charges and then to later charges. "Specific" payments were applied to particular subaccounts identified by the contractor. Anderson periodically made "generic" payments to his master account using money the Bates paid him. These payments were therefore not credited to the Bates subaccount in their entirety. Between October 15, 2010 and July 1, 2011, Century provided Anderson with approximately $57,161.37 in materials for the

Bates project but because the payments Anderson made were "generic," Century applied only $14,966.81 to the Bates subaccount. Anderson was basically reducing his oldest balances on other jobs with the Bates' money. Therefore, the Bates account became delinquent, with a balance of $42,194.56 by July 1, 2011.

[¶ 7] Ken Owens (Owens), Century's manager, had a number of conversations with Anderson about the delinquent status of the Bates account, and he informed Anderson that Century might assert a lien against the Bates property to ensure payment. On July 1, 2011, Century prohibited Anderson from making future charges for materials for the Bates home because of the delinquency. Of course, Century was willing to sell materials to Anderson for cash, and did so after that point in time.

[¶ 8] On July 22, 2011, approximately 280 days after Century first supplied materials to Anderson in connection with the Bates project, Century mailed a *Notice of Lien Liability* to the Bates.[1] This was the first time they were notified that their contractor was in arrears, and that they could be responsible for the outstanding debt to Century. Shortly after receiving this notice, the Bates contacted Owens, who confirmed that the subaccount Anderson established with Century in connection with the Bates project was delinquent. Owens also notified the Bates that Century might file a lien against their property if the subaccount remained unpaid. Century then allowed Anderson to charge some materials for the Bates home in September and October of 2011.[2]

[¶ 9] On October 21, 2011, Century sent a *Wyoming Notice to Owner* to the Bates by certified mail. That same day, Century mailed a more extensive *Notice of Lien Liability* to all parties involved in the dispute.[3] One month later, on November 29, 2011, Century mailed a *Notice of Intent to File Lien* to the Bates and to Anderson. Owens also drove to the Bates residence where he hand-delivered the *Notice of Intent to File Lien* to Shad Bates. On December 23, 2011, Century recorded its *Statement of Lien* against the Bates property; and on December 27, 2011, Century delivered a *Notice of Filing Lien* to the Bates and other interested parties. Finally, on June 18, 2012, Century filed a complaint seeking, among other things, to foreclose the lien against the Bates property.

[¶ 10] After reviewing the invoices attached to the *Statement of Lien*, the Bates contested certain charges. In an effort to accommodate their concerns, Century deducted the entire contested amount except one charge totaling $1,348.50 for 150 sheets of drywall. At trial, Century sought judgment in its favor for $37,438.53 in principal, $20,949.61 in contract-based interest, and costs of $659.00. The interest was calculated at the rate of 1.33% per month (16% annually) based on the pro-

1. The 2010 amendments found in Wyo. Stat. Ann. § 29–2–112 should at least assure that homeowners can identify those supplying materials and demand lien waivers before paying the general contractor. They require that subcontractors or materialmen send notice to the record owner or his agent of the right to assert a lien within thirty days after first supplying materials. Wyo. Stat. Ann. § 29–2–112(a)(i) and (ii)(B) (LexisNexis 2011). The statutes in force at the time arguably did not require a materialman to give any notification that it was supplying materials unless the contractor posted a notice at the jobsite or the owner included one in the project specifications. Wyo. Stat. Ann. § 29–2–111(a), (f), and (g) (LexisNexis 2009). Even then, the notice to be provided was to the prime contractor, not the owner. Wyo. Stat. Ann. § 29–2–111(a). Such a notice would arguably have been of little value in this case, since the prime contractor was the one misapplying the funds.

2. Anderson attested by affidavit that he attempted to pay Century cash for materials he received on September 19, 2011, but that he was told that "I needed to charge a few items so Century Lumber could file a lien." Since the district court made no findings as to this piece of evidence in its partial summary judgment, and because we have no way of knowing if Anderson testified to this effect at trial, we ignore this statement.

3. At that time, the other interested parties included Eric Anderson, d/b/a Anderson Carpentry and Construction; Shad Alan Bates and Trisha Diane Bates, husband and wife; and Farm Credit Services of America, FCLA. The Bates obtained a secured loan in the amount of $303,450.00 from Farm Credit Services of America to finance the construction of their property. Farm Credit Services of America was dismissed from the case per agreement of the parties and Eric Anderson d/b/a Anderson Carpentry and Construction was dismissed after filing for bankruptcy.

visional language included on each Century invoice to Anderson.

[¶ 11] The parties filed cross-motions for summary judgment or partial summary judgment prior to trial. In a November 12, 2014 decision letter, the district court determined that Century's lien statement was perfected and that Century timely filed its action to foreclose its materialman's lien within 180 days of perfection. The district court also found that the materialman's lien was valid and enforceable against the Bates property. This ruling was evidently not, quite as broad as it might seem, because the court later addressed some aspects of whether the lien was timely filed in its findings after trial.

[¶ 12] The district court held a bench trial on the issues remaining after partial summary judgment on April 8, 2015. In an April 20, 2015 order, the district court first addressed whether the inclusion in its *Statement of Lien* of items not specifically used in the construction of the Bates home caused the lien to be a false or frivolous lien under Wyo. Stat. Ann. § 29-1-311(b). It found that Century had amended its lien to include only the materials furnished for the Bates project, and that there was no evidence to suggest that the lien was false or frivolous. It thus declined to strike and release the lien on that basis.

[¶ 13] Next, the district court addressed the lien's timeliness and the Bates' contention that the lien was not filed within ninety days of substantial completion of the project. The Bates contended that the project was substantially completed in July 2011. The district court, however, found that the *Statement of Lien* was timely filed because Century continuously provided materials for the Bates project under "one overarching contract" from October 2010 to October 2011.

[¶ 14] Finally, the district court analyzed whether Century was entitled to include accrued interest in the lien amount. Although Century initially sought statutory prejudgment interest, it clarified at trial that it sought only contract-based monthly interest of 1.33% based on the language of its invoices

to Anderson. The district court concluded that the lien statutes do not explicitly allow materialmen to recover contract-based interest. Rather, it reasoned, the statutes allow materialmen to claim only an amount "for material furnished," citing Wyo. Stat. Ann. § 29-2-101. As a result, the court deducted accrued interest from the lien amount and awarded Century $37,438.53, plus costs of $659.00, for a total judgment of $38,097.53. The parties' respective appeals followed.

## STANDARD OF REVIEW

[¶ 15] We resolve this appeal based upon the timeliness of Century's lien under Wyo. Stat. Ann. § 29-2-106(a). The district court made findings of undisputed material fact on partial summary judgment in its decision letter, which was referred to in its order granting partial summary judgment. It also made additional findings after a bench trial on the remaining issues. We must review both.

[¶ 16] Under Wyoming Rule of Civil Procedure 56(d), the court was entitled to determine what material facts exist without substantial controversy:

(d) *Case Not Fully Adjudicated on Motion.*—If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

W.R.C.P. 56(d).[4]

[¶ 17] As will be discussed below, the parties have not challenged the district court's

---

4. For a discussion of Rule 56(d), *see* 10B Charles A. Wright, et al., *Federal Practice and Procedure,* *Civil* § 2737 (April 2016 update, 3d ed.).

finding on partial summary judgment that the Bates home was substantially complete in July of 2011, and the district court did not modify this finding in its order after trial. We need not therefore further discuss the standard of review for a partial summary judgment.

[¶ 18] As to those facts found after a bench trial, we review the district court's factual findings to determine whether they were clearly erroneous, and its legal conclusions de novo. *Goforth v. Fifield*, 2015 WY 82, ¶ 34, 352 P.3d 242, 249 (Wyo. 2015) (citing *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 97, 226 P.3d 889, 922 (Wyo. 2010)).

[¶ 19] In this case, review of the findings after trial is even more limited because we have been provided no trial transcript. Under these circumstances, we must presume that there are no factual irregularities in the judgment, and that it was reasonably based on competent evidence. *Harignordoquy v. Barlow*, 2013 WY 149, ¶ 17, 313 P.3d 1265, 1269 (Wyo. 2013); *see also* Tyler J. Garrett, *Anatomy of a Wyoming Appeal: A Practitioner's Guide for Civil Cases*, 16 Wyo. L. Rev. 139, 155 (2016). Nonetheless, we may review for errors of law which appear on the face of the district court's order. *Walker v. Walker*, 2013 WY 132, ¶ 46, 311 P.3d 170, 180 (Wyo. 2013).

## DISCUSSION

[¶ 20] Wyo. Stat. Ann. § 29-2-106(a), as it existed at the time of the events of this case, provided as follows:[5]

(a) Every contractor shall file his lien statement within one hundred twenty (120) days and every other person shall file within ninety (90) days:

(i) After the last day when work was performed or materials furnished under contract; or

(ii) From the date the work was substantially completed or substantial completion of the contract to furnish materials, whichever is earlier; or

(iii) With respect to an employee or subcontractor, after the last day he performed work at the direction of his employer or contractor.

Wyo. Stat. Ann. § 29-2-106(a) (LexisNexis 2009).

[¶ 21] As to the language in subsection (a)(ii), the district court found in its decision letter that "Anderson substantially completed the Bates home in July 2011, and that the last 'substantial' charge [for materials used] in the home occurred on June 17, 2011." A review of the materials filed in support of and in opposition to the parties' cross-motions for summary judgment finds support for these conclusions in the affidavits of Shad Bates and Eric Anderson. Century presented no countervailing evidence and did not move to strike those affidavits. This finding was, as already noted, not challenged on appeal. Furthermore, in its post-trial order, the court noted that the Bates and Anderson (who evidently testified at trial) claimed that the home was substantially complete by July 2011, which was consistent with its finding on partial summary judgment.[6]

[¶ 22] The court did not consider the date of substantial completion to be important, as it held that the materials, whether charged or bought with cash, were supplied pursuant to "one overarching contract," and that they were last supplied on October 7, 2011. This phrase may refer to the contract between Anderson and Century, or the contract between Anderson and the Bates—we cannot tell for certain from the decision. Certainly

---

5. The statute was amended in 2010, but the changes were not effective until July 1, 2011. The amendment contained a specific provision that it would not apply to any projects commenced before its effective date. 2010 Wyo. Sess. Laws ch. 92, § 4, at 425 (cited in *Electrical Wholesale Supply Co., Inc. v. Fraser*, 2015 WY 105, ¶ 20, 356 P.3d 254, 260 (Wyo. 2015)). Since the district court found that Century began to supply materials in 2010, the old statute applies.

6. We note that there is considerable confusion as to whether it is proper to refer to a Rule 56(d) finding as a partial summary judgment, because such a finding is not final or appealable. *See* 10B Wright, *supra*, § 2737. It is clear that the court could have modified this finding if facts presented at trial convinced it otherwise, but it did not do so. *Id.*

there is no suggestion that there was ever a contract between Century and the Bates.

[¶ 23] In any event, the district court believed the lien to be timely filed because Century supplied materials that Anderson used in the Bates residence after substantial completion on a cash basis and then for credit after a 93-day lapse in charges. This is a legal conclusion, not a factual one.

[¶ 24] Standing alone, the finding on summary judgment that the home was substantially complete in July of 2011 would mean, giving Century the benefit of the doubt, that the time to file a lien began no later than July 31, 2011. The lien statement was filed on December 23, 2011, 146 days after July 31. That portion of the statute is clear and unambiguous, and our rules would require that we give effect to the plain and ordinary language used in it. *Harmon v. Star Valley Medical Center*, 2014 WY 90, ¶ 15, 331 P.3d 1174, 1178 (Wyo. 2014). No matter how the dates are calculated, the lien was not filed within ninety days of the substantial completion date the court found, and it would therefore be untimely under the version of Wyo. Stat. Ann. § 29-2-106(a)(ii) then in effect.

[¶ 25] On the other hand, the district court also found after trial that Century supplied Anderson materials he used on the Bates home for cash after it cut off his credit. In addition, it found that materials were again supplied on credit in September and October of 2011, after the 93-day cash-only hiatus.[7] It evidently reasoned that the date of substantial completion of either the Bates-Anderson contract or the Anderson-Century agreement did not control because the statute also allowed Century to file within ninety days of last supplying materials under one contract or the other, since the statute also provides that the lien can be filed ninety days "[a]fter the last day when work was performed or materials furnished under contract." Wyo. Stat. Ann. § 29-2-106(a)(i) (pre-2010 amendment). Although we are not certain which agreement the district court considered to be the "overarching contract," in order for this conclusion to be correct, subsections (a)(i) and (a)(ii) would have to be alternatives, and Century would have to have been entitled to avail itself of the later of those dates.

[¶ 26] Subsection (a)(ii) of the statute in force at the time materials were supplied provides that the date when the time to file a lien begins to run is "whichever is earlier" among events. The phrase could apply only to the dates of substantial completion of the project or substantial completion of the contract to supply materials under subsection (a)(ii). On the other hand, it would make little sense for the legislature to require a material supplier to file a lien within ninety days of either type of substantial completion, and then provide that any provision of materials after that date would restart the clock under subsection (a)(i), because materials and work certainly can be needed after substantial completion for full completion and for "punch list" items the contractor must repair or replace.

---

7. It is doubtful that the items supplied for cash were "lienable" as they had to be in order to support a lien. *Mawson–Peterson Lumber Co. v. Sprinkle*, 59 Wyo. 334, 346–48, 140 P.2d 588, 592–93 (1943). Because they were sold for cash, there was no debt associated with them, and a lien must secure an indebtedness:

> As a lien is a right to encumber property until a debt is paid, it presupposes the existence of a debt. If there is no debt in the first instance, there is no need for a lien, so a lien cannot legally exist or attach. In other words, without a debt, there can be no lien.

51 Am. Jur. 2d *Liens* § 13 (2d ed. 2011). Other cases and authorities confirm this general principle. *Marina Funding Group, Inc. v. Peninsula Property Holdings*, 950 So.2d 428, 430–431 (Fla. App. 2007) (where a satisfaction appeared to have satisfied a debt, there could be no lien); *Goetz v. Selsor*, 628 S.W.2d 404, 406 (Mo. App. 1982) (per curium); *Harbour Village at Saga Bay, Inc. v. Dahm*, 367 So.2d 1100, 1102 (Fla. App. 1979) (where there was no debt or duty, there could be no lien); 1 Leonard A. Jones, *Jones on Liens* § 3, at 5 (3d ed. 1914) (a lien is a legal charge on either personalty or real estate for the satisfaction of a debt or obligation); 53 C.J.S. *Liens* § 1, at 629 (2005) (a lien is understood and used to denote a claim, encumbrance, or charge on property as security for the payment of some debt, obligation, or duty). If the items in question were not lienable, there would be a gap of more than ninety days in the provision of materials that could support a lien. However, we need not address this issue in light of the manner in which we construe the applicable statute.

[¶ 27] It is thus uncertain whether the phrase "whichever is earlier" is just poorly placed to convey its correct meaning, or whether it was placed where it is despite the odd result that would follow. This creates an ambiguity that requires us to engage in statutory interpretation:

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is *de novo*. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

*Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014) (citations omitted).

[¶ 28] An additional firmly rooted rule of statutory construction also aids in our interpretation. That is, "where the legislature, by subsequent amendment or legislation in the same act or on the same subject, enacts language which clarifies previously ambiguous language, the subsequent language gives meaning to the previously ambiguous expression." *Moncrief v. Wyoming State Bd. of Equalization*, 856 P.2d 440, 444–45 (Wyo. 1993).

[¶ 29] In 2010, the Wyoming legislature amended the statute in question and clarified the ambiguity:

> (a) Except as provided in subsection (c) of this section, any contractor asserting a lien under this chapter shall file his lien statement within one hundred fifty (150) days and every other person asserting a lien under this chapter shall file within one hundred twenty (120) days:
>
> (i) **Of the earlier of:**
>
> (A) After the last day when work was performed or materials furnished under contract;
>
> (B) From the date of substantial completion of the project on which work was performed or materials were furnished under contract; or
>
> (ii) With respect to a subcontractor, after the last day he performed work at the direction of the contractor or other person authorized to provide direction.

Wyo. Stat. Ann. § 29–2–106(a), as amended by 2010 Wyo. Sess. Laws ch. 92, § 2 (emphasis added).

[¶ 30] In accordance with our longstanding rules of statutory construction, we are convinced that the earlier (or earliest) date triggered the obligation to file the lien under the pre–2010 statute, the version applicable in this case.[8] This means that the earlier date of substantial completion the district court found and not the date Century last provided materials began the period during which it could file its lien statement. For reasons already explained, the lien was therefore not timely as a matter of law. To hold otherwise would render a portion of the statute meaningless and produce an absurd result. *See McTiernan v. Jellis*, 2013 WY 151, ¶ 20, 316 P.3d 1153, 1159–60 (Wyo. 2013).

[¶ 31] In this case, the result required by the rigor of this rule is also equitable. *Id.* at ¶ 14, 316 P.3d at 1156 ("[L]ien statutes create remedies in derogation of common law and must be strictly construed" and "we will not extend the scope of statutory lien laws.").

---

8. We are aware that it might be difficult for a material provider to know when substantial completion has taken place. The legislature addressed this problem by an amendment that requires the property owner to record a notice of substantial completion with the county clerk. Wyo. Stat. Ann. § 29–2–106(c) and (d) (as amended in 2010).

Century knew that Anderson was delinquent, and did not notify the Bates for a significant period of time. There is no doubt that it could have timely filed its lien at the end of July 2011, when it had already been supplying materials only for cash for about a month because Anderson was behind on that account because the Bates money had been applied to other subaccounts. On the other hand, the district court's ruling enforcing the lien would cause the Bates to pay for materials twice.

[¶ 32] Reversed.